*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* DICKY, Minors.

UNPUBLISHED
January 18, 2024

No. 366061
Genesee Circuit Court
Family Division
LC No. 19-135892-NA

Before: BOONSTRA, P.J., and O'BRIEN and SWARTZLE, JJ.

PER CURIAM.

Respondent's two biological children were removed from his care after petitioner received reports that respondent's home was unfit. The trial court subsequently terminated respondent's parental rights to the children. He challenges the termination on appeal; finding no basis for reversal, we affirm.

## I. BACKGROUND

Respondent's oldest child was removed from respondent's care after a Children's Protective Services (CPS) investigator observed that respondent's home did not have heat, did not have running water, and was cluttered with garbage that blocked doorways and created fire hazards. The trial court ordered respondent to participate in a treatment plan that included a psychological evaluation, parenting and anger-management classes, supportive visitation, an employment assistance program, and counseling. Respondent was also required to maintain suitable housing and income.

Respondent's youngest child was born with cerebral palsy while he was participating in his treatment plan, and the youngest child was also removed from respondent's care because his home remained unfit. The children remained in foster care for three years before they were returned to respondent's care subject to respondent's continued participation with the Family Reunification Program that would provide, among other things, daycare services for the children. Respondent rented a new apartment that he furnished for the children, and he told petitioner that he had arranged daycare services for the children. The children were not placed in daycare during the pendency of the case, however, and the Family Reunification Program stopped providing services to respondent because he did not respond to the program's communications.

Respondent left the children unsupervised one night, and they walked to a nearby store at 2:00 a.m. A neighbor returned the children to their home, and the neighbor stated that respondent appeared to be intoxicated. At the time, both children were under four years old. After this incident, a CPS worker met with respondent, gave him a door alarm to install on his front door, and gave respondent a drug test that revealed that his blood-alcohol-content level was 0.08 or higher.

A CPS worker visited respondent later, and he refused to submit to another drug test because he admitted that he had already consumed alcohol that day. The CPS worker observed garbage on respondent's kitchen floor, rotten food in the kitchen, unattended knives that were left out in reach of the children, and an infestation of flies throughout respondent's apartment. Further, the CPS worker noted that the children were not clean and respondent had not installed the door alarm that was given to him. The children were once again removed from respondent's care, and they were eventually placed with the same foster parents.

It was reported that respondent was drinking alcohol three to four days a week, and consuming at least two 24-ounce beers each day that he did drink. Respondent testified that he did not have a drinking problem because he was drinking in his own home, he was over 21-years-old, he only drank beer, and he never lost employment or was arrested because of his alcohol consumption. Several CPS workers, however, testified that respondent was intoxicated when they interacted with him, and respondent was discharged from his parent-partner program because when he was intoxicated he would become angry with the workers.

Respondent's parenting-time visits with the children revealed that respondent had a bond with both children. Respondent did not know how to interact with his youngest child, however, because she had medical needs including leg braces for mobility, reminders to swallow, and speech delays. Respondent would also become angry when there were minor problems or issues during his parenting time and, on two different occasions, a foster-care worker had to call security personnel because respondent had threatened her in front of the children.

The children's foster parents testified that the children were receiving occupational, speech, and physical therapy while they were in their care, and they were willing to adopt the children. It was further reported that all of the children's educational and medical needs were being met and the children were doing well with their foster parents. This was in contrast to the children's time with respondent, because he consistently indicated that he did not believe that his children needed therapeutic support. This included not maintaining medical appointments for his youngest child with cerebral palsy.

The trial court reviewed photographs of respondent's apartment that showed trash throughout his apartment, a carton containing sour milk sitting next to a knife, and ash covering the apartment's surfaces. Further, there was rotten food in the refrigerator and liquid from prepared meat spread over the stove and the countertop. The trial court found that these were not suitable living conditions for the children and that respondent had not rectified this condition. The trial court also found that respondent's alcohol consumption presented a continued barrier to his reunification with the children, and his alcohol-use was not likely to be resolved within a reasonable time given that he continued to drink alcohol throughout the pendency of the case while stating that he did not have a problem.

The trial court held that respondent lacked the insight required to address the children's emotional and physical needs given that the children had endured extensive trauma and respondent did not understand the impact of that trauma or the children's need for services to address that trauma. The trial court held that it was in the best interests of the children to terminate respondent's parental rights when addressing that the children's needs were being met by their foster family. Consequently, the trial court terminated respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j).

Respondent now appeals.

## II. ANALYSIS

### A. STATUTORY BASIS

Respondent first argues that the trial court erred when it found that there were statutory grounds sufficient to terminate his parental rights to the children. "This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination." *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). "A finding is clearly erroneous if although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re Rood*, 483 Mich 73, 91; 763 NW2d 587 (2009) (cleaned up).

The trial court found that MCL 712A.19b(3)(c)(*i*) was one of the statutory bases appropriate to terminate respondent's parental rights to the children, and it provides:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:
>
> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

MCL 712A.19b(3)(c)(*i*) is appropriate "when the conditions that brought the children into foster care continue to exist despite time to make changes and the opportunity to take advantage of a variety of services." *In re White*, 303 Mich App at 710 (cleaned up).

In this case, there were more than 182 days between the initial dispositional order and the termination hearing. Therefore, the 182-day statutory period was satisfied.

The children were brought into petitioner's care as a result of respondent's unfit home and his alcohol use. Respondent participated in parenting classes, psychological evaluations, and found new housing that was, at one point, suitable. That new housing, however, became unfit

when respondent let trash pile up in the home, left spoiled milk out on the counter, and left rotten food in the refrigerator that led to an infestation of flies throughout his home. Further, it was reported that respondent consumed alcohol three to four days a week and he was reportedly intoxicated when the children left his home at 2:00 a.m. without him noticing. Respondent also testified that he did not believe that he had a problem with alcohol, demonstrating that he was not willing to change his behavior.

Given respondent's conduct during the pendency of this case, we are not left with a definite and firm conviction that a mistake has been made. See *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011). "[T]he totality of evidence amply" supports that respondent "had not accomplished any meaningful change" in the conditions that led to adjudication because he did not display any improvement in his ability to maintain a fit home, and he continued to consume alcohol that led to him not realizing when his children wandered out of his care. *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009). Therefore, the record supports that the trial court did not clearly err when it found by clear and convincing evidence that respondent's conditions continued to exist.

Because one statutory ground for termination is established, "we need not consider whether the other grounds cited by the trial court also supported the termination decision." *In re Foster*, 285 Mich App 630, 633; 776 NW2d 415 (2009).

## B. REASONABLE EFFORTS

Respondent also briefly argues that petitioner did not make reasonable efforts to reunify him with the children. This Court reviews for clear error a trial court's finding that "reasonable efforts were made to preserve and reunify the family." *In re Fried*, 266 Mich App 535, 542-543; 702 NW2d 192 (2005). "A finding is clearly erroneous if although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re Rood*, 483 Mich at 91. "While the [Department of Health and Human Services] has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012).

Specifically, respondent argues that petitioner failed to take respondent's limitations into consideration under the Americans with Disabilities Act, 42 USC 12101 *et seq*, and the termination of his parental rights would have been avoided if daycare had been arranged for the children. The record demonstrates, however, that respondent told petitioner that he had daycare services arranged before the children were returned to him, and he ignored assistance from the Family Reunification Program that would have also provided daycare services. Further, respondent did not inform petitioner that he needed accommodations to set up those services. Petitioner "cannot accommodate a disability of which it is unaware." *In re Hicks/Brown*, 500 Mich 79, 87; 893 NW2d 637 (2017).

Given the petitioner's attempts to facilitate daycare services, and respondent's refusal to participate, the trial court did not clearly err by concluding that petitioner made reasonable efforts to reunify respondent with his children on this issue. See *In re Fried*, 266 Mich App at 542-543.

## C. BEST INTERESTS

Lastly, respondent argues that the trial court erred by finding that the termination of his parental rights was in the children's best interests. "Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). The trial court's ruling regarding best interests is reviewed for clear error. *In re Schadler*, 315 Mich App 406, 408; 890 NW2d 676 (2016). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *In re Ellis*, 294 Mich App at 33.

"The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App at 713. With respect to the children's best interests, this Court places its focus on the children rather than the parent. *In re Moss*, 301 Mich App at 87. "In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App at 41-42 (cleaned up). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714.

In this case, the trial court acknowledged that respondent had a bond with the children, but it found that respondent did not understand the children's needs. Further, respondent stated that the children did not need therapeutic support and he failed to maintain medical appointments for his youngest child while she was in his care.

This was in contrast to the foster parents' care of the children, who testified that the children were receiving occupational, speech, and physical therapy while they were in their care. Further, the foster parents were willing to adopt the children. It was further reported that all of the children's educational and medical needs were being met and the children were doing well with their foster parents.

Given that the children were doing well in their preadoptive home, and respondent did not demonstrate improvement in his ability to parent the children, we are not left with a definite and firm conviction that a mistake has been made. See *In re Ellis*, 294 Mich App at 33. Therefore, the record supports that the trial court did not clearly err when it found by a preponderance of evidence that termination and adoption was in the children's best interests.

## III. CONCLUSION

Petitioner provided reasonable efforts for the reunification of respondent with the children. Respondent was not able, however, to maintain fit housing and his alcohol consumption interfered with his ability to parent and supervise the children. The trial court did not err when it found clear and convincing evidence that a statutory basis existed to terminate respondent's parental rights

because respondent did not rectify his barriers to reunification, and, similarly, a preponderance of the evidence supports the trial court's finding that termination of respondent's parental rights was in the children's best interests.

Affirmed.

/s/ Mark T. Boonstra
/s/ Colleen A. O'Brien
/s/ Brock A. Swartzle